**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| TIMOTHY W. KOVACH, *et al.*, ) | CASE NO. 1:24-cv-01780-CEF |
| ) | |
| Plaintiffs, ) | JUDGE CHARLES E. FLEMING |
| ) | |
| v. ) | |
| ) | |
| CITY OF LAKEWOOD, OHIO, *et al.*, ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendants. ) | |

Before the Court are two motions to dismiss Plaintiff's complaint ("Complaint") under Fed. R. Civ. P. 12(b)(6): (1) Defendants City of Lakewood ("Lakewood"), Timothy Dunphy ("Dunphy"), and Ryan Fairbanks' ("Fairbanks") (collectively, the "City") motion to dismiss ("City MTD") and (2) Defendant Joseph Lally, M.D.'s ("Dr. Lally") motion to dismiss ("Lally MTD"), (ECF Nos. 2, 17, 20). For the reasons discussed below, the City MTD and the Lally MTD are **GRANTED**. All claims against Defendants are **DISMISSED WITH PREJUDICE**.

## I.    BACKGROUND

### A.  Factual Background

#### 1.  Lakewood EMS Services and the Kovach Family

Plaintiffs Timothy Kovach and Ashley Ziganti ("Plaintiffs") are spouses and the parents of three minor children, including EK-Z who suffers from seizures. (ECF No. 2, PageID #15–16). After moving to Lakewood, Ohio, Plaintiffs called 911 to request emergency assistance from the Emergency Medical Services of Lakewood ("EMS") for EK-Z's seizures on the five occasions at issue: February 13, 2022, July 20, 2022, October 12, 2022, December 30, 2022, and August 30, 2023. (*Id.* at PageID #16–17, 22).

## 2. *February 13, 2022 EMS Run and Communications*

On February 13, 2022, Plaintiffs called 911 to request EMS for EK-Z's seizures. (*Id*. at PageID #17–18). This was the second time that Plaintiffs called EMS since moving to Lakewood. (*Id.* at PageID #16). EMS personnel administered 2.5 mg of midazolam ("Versed") to EK-Z, who was three years old and weighed 35 pounds at the time. (*Id.* at PageID #17). Plaintiffs allege that on February 13, 2022, 2.5 mg of Versed was listed as an adult dosage in the regional EMS protocols ("Regional Protocols"). (*Id*.). In an email to the Lakewood City Council, Plaintiff Kovach protested the Versed dosage given to EK-Z, stating that it exceeded the Regional Protocols. (*Id.* at PageID #18). Former Division of Fire Chief Timothy Dunphy ("Dunphy") responded in a letter referencing the "established protocols … approved by all three Northeast Ohio hospital systems," but allegedly did not address the Versed dosage dispute that Plaintiffs raised. (*Id.* at PageID #18). Plaintiff Kovach replied to Dunphy again discussing the 2.5 mg of Versed administered to EK-Z, instead of the 1.6 mg dose for a minor of 35 pounds Plaintiff had interpreted the Regional Protocols to recommend. (*Id*. at PageID #18–19).

Assistant Law Director Jennifer Swallow ("Swallow") emailed Plaintiffs that Dr. Lally, the Medical Director of the Lakewood Division of Fire, reviewed the run reports for the incidents that Plaintiffs raised and found that "all medications administered were within protocol and within proper dosing ranges for a child the age and weight of [Plaintiffs'] daughter." (*Id*. at PageID #19). In a June 6, 2022 email, Plaintiff Kovach asserted again that the 2.5 mg of Versed EK-Z received exceeded the proper dosage. (*Id.* at PageID #19). Ten days later, Plaintiff Kovach spoke with Swallow, repeating the contents of that email. (*Id.*). EMS did not administer Versed to EK-Z for the four subsequent EMS runs that occurred on July 20, 2022, October 12, 2022, December 30, 2022, and August 30, 2023. (*Id*. at PageID #17).

### 3. *July 20, 2022 EMS Run*

On July 20, 2022, EK-Z suffered another seizure, prompting Plaintiffs to call 911 for EMS services. (*Id.* at PageID #16). After that EMS run, in an August 12, 2022 email, Swallow "accused Plaintiffs of 'refus[ing] to allow paramedics to provide any pre-medical care to [their] daughter, resulting in her seizing for the entire trip to Metro Health'" hospital. (*Id.* at PageID #19). Swallow emailed Plaintiffs:

> [I]f you call 911 for transport of your daughter due to a seizure, all regular protocol will be implemented and she will be treated for her seizure and any other emergent symptoms. Not only does failure to treat your daughter put her at risk, but it also places our EMS staff at risk for failure to act in such circumstances.

(*Id.* at PageID #20).

### 4. *The "Dunphy Directive"*

On August 30, 2022, Dunphy emailed Swallow, Assistant Fire Chief Nicholas Sambula ("Sambula"), and members of the Lakewood Fire Department. (*Id.* at PageID #16–17). In that email, Dunphy stated Lakewood police would accompany EMS on future calls to Plaintiffs' residence "'to allow for [them] to do [their] job[,]'" including "'riding to the hospital with the medic in the back if needed.'" (*Id.* at PageID #17). Plaintiffs refer to this directive as the "Dunphy Directive." (*Id.*). The Dunphy Directive also advised EMS personnel to "'consider having the parents ride upfront, especially when rendering patient care.'" (*Id.*). The Dunphy Directive concluded with informing EMS that they can "'feel free to have LPD assist in anyway'" and that "'if the parents refuse medical treatment, we will have them sign a refusal form and still transport the patient.'" (*Id.*).

On September 14, 2022, Plaintiffs emailed Dunphy, Swallow, and the Mayor of the City of Lakewood repeating their concerns about the February 13, 2022 EMS run, among other issues. (*Id.* at PageID #20–21). About two weeks later, Swallow emailed Plaintiffs, stating that Dr. Lally

3

had "'again' reviewed the 'EMS run report from February 13' and found '[t]he treatment was within protocol.'" (*Id.* at PageID #21).

5. *Post-Dunphy Directive EMS Runs*

On October 12, 2022, EK-Z had her next seizure, prompting Plaintiffs to call 911 for EMS services. (*Id.* at PageID #22). Two police officers accompanied EMS personnel to respond to Plaintiffs' 911 call. (*Id.*; ECF No. 22, PageID #112). One police officer entered Plaintiffs' residence and wore a "safety vest" covering his "police insignia." (ECF No. 2, PageID #22). However, "[a]t no time on October 12, 2022, were Plaintiffs arrested, detained, or threatened with any law enforcement action." (*Id.*).

On December 30, 2022, Plaintiffs called 911 for another medical emergency. (*Id.*). Upon arrival, EMS personnel examined EK-Z and determined that EK-Z did not require treatment or transportation. (*Id.*; ECF No. 22, PageID #112). (*Id.*). During that run, police officers accompanied EMS personnel to the residence but did not enter. (ECF No. 2, PageID #22).

On August 30, 2023, EK-Z had another seizure, which prompted Plaintiffs to call 911, but Plaintiff Ziganti "requested that police not accompany EMS to the residence." (*Id.*). Plaintiffs allege Dr. Lally "recognized the address" and "requested that police be dispatched." (*Id.* at PageID #23). When one police officer "asked why his presence had been requested, an EMS employee pointed to the patrolman's body-worn camera." (*Id.*). None of the police officers entered the residence or "detained or threatened to detain or took any law enforcement action against Plaintiffs."[1] (*Id.*).

---

[1] Plaintiffs also alleged that neither Swallow, Dr. Lally, or Dunphy, nor any other safety force members had instituted any administrative or judicial proceeding against Plaintiffs. (*Id.* at PageID #20).

Between October 6, 2023 and March 19, 2024, Plaintiffs have, through their attorney, attempted to secure a rescission of the Dunphy Directive.  (*Id.*).  Plaintiffs, with one exception,[2] have since chosen not to call 911 for EMS services when EK-Z seizes.  (*Id.* at PageID #24).  Instead, Plaintiff Kovach uses his own car to drive EK-Z to the hospital.  (*Id.*).

### B.  Procedural Background

On October 11, 2024, Plaintiffs filed a Complaint against Defendants.[3]  (ECF No. 2).  Plaintiffs asserted two claims: 1) under 42 U.S.C. § 1983 for First Amendment retaliation (count one); and 2) for violation of the Ohio Constitution's Petition Clause under Article I, Section 3 (count two).  (*Id.* at PageID #24–26).  On April 3 and 4, 2025, Defendants filed their respective motions to dismiss, in which they seek the dismissal of all claims asserted against them.  (ECF No. 17; ECF No. 20).  On April 16, 2025, the Court granted Plaintiffs' motion to dismiss count two of the Complaint against Defendants under Rule 21 of the Federal Rules of Civil Procedure.  (ECF No. 21; Order [non-document] dated April 16, 2025).  Count one remains, subject to the Court's disposition of the City MTD and the Lally MTD.  Plaintiffs filed memoranda in opposition to both the City MTD and the Lally MTD as to count one of the Complaint.  (ECF No. 22; ECF No. 23).  The City and Dr. Lally each filed replies in support of their respective MTDs.  (ECF No. 25; ECF No. 28).

---

[2] That one exception occurred in November 2023, when EK-Z seized while at physical therapy in Westlake, Ohio.  (*Id.*).  Police officers did not accompany Westlake emergency services while EK-Z was transported to the hospital.  (*Id.*).

[3] The Complaint asserts civil rights claims under 42 U.S.C. § 1983 against the City of Lakewood, former Division of Fire Chief Timothy Dunphy, current Division of Fire Chief Ryan Fairbanks, and the Medical Director for the City of Lakewood Division of Fire, Joseph Lally, M.D.  (ECF No. 2).  Dr. Lally serves as Medical Director through his employment with the Cleveland Clinic and is separately represented.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  A complaint need not contain detailed factual allegations, but its factual allegations must be enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.

In assessing plausibility, a court must construe the pleadings in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  When reviewing a motion to dismiss, a court distinguishes between "well-pleaded factual allegations," which it must treat as true, and "naked assertions," which it need not treat as true. *Iqbal*, 556 U.S. at 678–79.  A plaintiff is obligated to provide sufficient grounds to show entitlement to relief; a court will not accept as true a "conclusory allegation" or "a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 557, 545.

## III.  ANALYSIS

### A.  Statute of Limitations

As an initial matter, the City argues that Plaintiffs' claim is time-barred by the applicable two-year statute of limitations under Ohio Rev. Code § 2305.10 because: (1) the claims are based on an alleged injury that, in Defendants' view, occurred on August 30, 2022, when the Dunphy Directive was issued; (2) each claim accrued when Dunphy Directive was implemented; and (3)

6

this action was filed on October 11, 2024—more than two years after the alleged injury occurred.[4]

(ECF No. 17, PageID #85–86).  Dr. Lally argues that Plaintiffs' claim is time-barred by the two-year statute of limitations period set forth in Ohio Rev. Code § 2744.04.  (ECF No. 20-1, PageID #101–03).  Dr. Lally similarly claims that Plaintiffs' claims accrued on August 30, 2022.  (*Id.* at PageID #101).  Plaintiffs disagree, arguing that their action is timely because the alleged injury occurred on August 30, 2023, when Plaintiffs stopped calling 911 for EMS for EK-Z's seizures.[5]

(ECF No. 22, PageID #117).

Congress has not established a uniform statute of limitations for actions under the Civil Rights Act, including those arising under § 1983.  To determine the appropriate statute of limitations, the Court "must borrow one from the most analogous state cause of action."  *3799 Mill Run Partners, LLC v. City of Hilliard, Ohio*, 839 F. App'x 948, 950 (6th Cir. 2020).  In Ohio, the Sixth Circuit applies the state's two-year statute of limitations for personal injury actions.  *Id.*; *see also Harrison v. City of Akron*, 43 F. App'x 903, 904 (6th Cir. 2002) (affirming district court's conclusion that two-year statute of limitations applied to First Amendment retaliation claim under 28 U.S.C. § 1983); *Printup v. Dir., Ohio Dep't of Job & Fam. Servs.*, 654 F. App'x 781, 784–85 (6th Cir. 2016); *Oko v. City of Cleveland*, No. 21-cv-2222, 2023 WL 4405270, at *5–6 (N.D. Ohio July 7, 2023) (collecting cases).

---

[4] Dr. Lally argues alternatively that if Plaintiffs' claim against him is construed as a 'medical claim' as defined in R.C. 2305.113, due to Plaintiffs' allegations that Dr. Lally misconstrued the Versed dosing guidelines, then it is still time-barred because the applicable statute of limitations would be one year.  (ECF No. 20-1, PageID #101).

[5] Plaintiffs alternatively contend that the alleged claims are not time-barred because they constitute "continuing violations."  (ECF No. 22, PageID #117).  But "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation."  *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999) (quoting *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991)) (internal quotation marks and citations omitted).  To the extent that Plaintiffs complain of injury arising from the Dunphy Directive, this standing directive constitutes a "continuing ill effect," and is not the result of continuing unlawful acts.  *Id.* Thus, the continuing violations doctrine does not apply here.

Federal law still determines when a § 1983 claim accrues. *3799 Mill Run Partners*, 839 F. App'x at 950.  "Ordinarily, the limitations period starts to run 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'"  *Printup*, 654 F. App'x at 784–85 (quoting *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)).  In determining when the § 1983 action accrues, courts "have looked to what event should have alerted the typical lay person to protect his or her rights."  *Kuhnle Bros., Inc.*, 103 F.3d at 520 (quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)).

To determine when Plaintiffs' cause of action accrued, we must first identify what injury should have made Plaintiffs aware that their rights had been violated and therefore "started the clock" on their statute of limitations.  *See Printup*, 654 F. App'x at 785.  Plaintiffs knew or had reason to know of their alleged deprivation of constitutional rights when police officers accompanied EMS for the third time on August 30, 2023, for this event would have alerted a typical layperson to protect his or her rights given that "Plaintiff Ziganti specifically requested that police not accompany EMS to the residence."  (ECF No. 2, PageID #22).  Plaintiffs' Complaint, filed on October 11, 2024, was thus timely under the applicable two-year statute of limitations. The Court is unpersuaded by Defendants arguments to the contrary.

### B.  First Amendment Retaliation Against All Defendants

Plaintiffs bring their retaliation claim against Defendants under 42 U.S.C. § 1983.  In count one, Plaintiffs allege that all Defendants retaliated against them by dispatching police officers to accompany EMS in response to Plaintiffs' exercise of their protected right to petition the government.  (ECF No. 2, PageID #24–25).  To survive dismissal, a plaintiff pleading a First Amendment retaliation claim under 42 U.S.C. § 1983 must show that: (1) the plaintiff engaged in constitutionally protected conduct; (2) the defendant took adverse action "that would deter a person

8

of ordinary firmness from continuing to engage in that conduct"; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thompson v. Ohio State Univ.*, 990 F. Supp. 2d 801, 809 (S.D. Ohio Jan. 6, 2014) (citing *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012)).

The City argues that Plaintiffs' First Amendment retaliation claim must be dismissed because Plaintiffs failed to allege that the City engaged in any adverse action, thereby failing the second prong.  (ECF No. 17, PageID #79).  The City argues that mere police presence, without any allegations of malfeasance, is not adverse action that causes substantial harm, as opposed to only a *de minimis* impact.  (ECF No. 17, PageID #79–81).  The City further argues that Plaintiffs' claim is not viable because they fail to allege a concrete personal injury and instead make conclusory allegations of emotional distress.  (*Id.* at PageID #77–81).

Plaintiffs disagree, contending in their opposition that the City engaged in adverse action, which was "escalatory and cumulative" in form, ultimately taking effect on August 30, 2023— when Plaintiffs stopped calling 911 for EMS when EK-Z seizes.  (ECF No. 22, PageID #110–12). As a result, Plaintiffs assert that they suffered a "concrete injury" because they wasted time by driving EK-Z to the hospital themselves rather than relying on EMS transportation services.  (*Id.* at PageID #111–12).  Moreover, they argue that they "continue to be threatened with continued governmental action," which Plaintiffs equate with "harassment." (*Id.*).

In the First Amendment context, the Sixth Circuit has held that "any action that would deter a person of ordinary firmness from exercising protected conduct will [constitute a sufficient adverse action], which may include harassment." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583–84 (6th Cir. 2012) (quoting *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010)).  The Sixth Circuit has found an adverse action if a private citizen's economic interests are

9

threatened. *Claggett v. Wenzler*, 397 F. Supp. 3d 1054, 1069 (S.D. Ohio, July 12, 2019) (citing *Fritz*, 592 F.3d at 725–28). In *Fritz*, the plaintiff sufficiently alleged an "adverse action" where the defendant denied the "plaintiff's requests for zoning and signage variances in connection with her home business, and threatened her business relationship with her employer if it did not 'reign in' her exercise of her First Amendment rights." *Id.* Likewise, in *Wenk*, the court found that a report alleging child abuse constituted an "adverse action" because it "would lead reasonable parents to refrain from engaging in protected activity." *Wenk v. O'Reilly*, 783 F.3d 585, 595 (6th Cir. 2015). An "adverse action" has also been found when a sheriff, who in response to the plaintiff's criticism of him, disseminated "confidential and highly personal details" of the plaintiff's rape, causing her great humiliation and emotional distress. *Bloch v. Ribar*, 156 F.3d 673, 676–86 (6th Cir. 1998).

Here, however, the adverse action pleaded by Plaintiffs is insufficient to create a cause of action. Nowhere in the Complaint do Plaintiffs allege that police officers engaged in any form of harassment or threatening conduct because of the Dunphy Directive. (*See* ECF No. 2); *see Poppy v. City of Willoughby Hills*, 96 F. App'x 292, 295 (6th Cir. 2004) (holding that oversight mechanisms, including requesting an employee's keys to her office to inspect records and installing a security camera in the hall outside her office, were not sufficiently consequential because they did not adversely affect her employment nor deter her from exercising First Amendment rights). Plaintiffs did not suffer a threat to their economic livelihood, *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010); they did not endure a search or seizure of property, *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002); they were not defamed, *Fritz*, 592 F.3d at 726; they were not threatened by a public agency to file suit, *Hornbeak-Denton v. Myers,* 361 F. App'x 684, 689 (6th Cir. 2010); nor were Plaintiffs subject to improper database

10

searches that threatened their livelihood, *Wurzelbacher*, 675 F.3d at 584.  The Court concludes that Plaintiffs allegations are insufficient to show that Defendants conduct—sending police officers to accompany EMS responders to ensure their safety—caused Plaintiffs to suffer any injury that would likely "chill a person of ordinary firmness from continuing to engage in protected First Amendment activity."[6] *See Claggett v. Wenzler*, 397 F. Supp. 3d 1054, 1069–70 (S.D. Ohio, July 12, 2019).

To the extent that Plaintiffs allege that issuing the Dunphy Directive is in itself "harassment" or otherwise an adverse action, the Dunphy Directive resulted in, at most, an "inconvenience" that was "*de minimus* in nature."  *Claggett* 397 F. Supp. 3d at 1070; *see Brown v. Crowley*, 312 F.3d 782, 801 (6th Cir. 2002) ("Where, as here, a challenged action has no consequences whatsoever, either immediate or long-term, it ineluctably follows that such an action is inconsequential.") (internal quotations omitted); *see Fritz*, 592 F.3d at 724 (When a plaintiff's "alleged adverse action is inconsequential, resulting in nothing more than a de minimis injury, the claim is properly dismissed as a matter of law.") (internal quotations omitted).  The Sixth Circuit has held that courts "must be careful to ensure that real injury is involved, lest we 'trivialize the First Amendment'" by allowing plaintiffs to bring "claims for *any* adverse action[,] no matter how minor."  *Fritz*, 592 F.3d at 728; *Wurzelbacher*, 675 F.3d at 584 (emphasis in original).  Under the framework of this Circuit, the mere fact that Plaintiffs preferred that police officers not accompany EMS because their presence inconvenienced or annoyed Plaintiffs is not sufficient to constitute an

---

[6] The Complaint also fails as a matter of law because Plaintiffs fail to adequately allege the third prong of a First Amendment retaliation claim: a causal connection that the City's "adverse action was motivated at least in part" by Plaintiffs' protected conduct.  *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010).  Their claim rests on the conclusory allegation that Defendants violated their rights by "dispatching police officers" and "refusing to rescind the Dunphy Directive all in retaliation" for petitioning the government.  (ECF No. 2, PageID #24).  The Court need not accept these "legal conclusions as true," and declines to do so.  *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011).

"adverse action."  *Wenk v. O'Reilly*, 783 F.3d 585, 595 (6th Cir. 2015) (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("petty slights or minor annoyances" will not qualify as sufficient adverse actions)).  Furthermore, Plaintiffs argue in their opposition memorandum:

> Unlike Lakewood ambulance, Plaintiff Kovach's car is not an emergency vehicle permitted to disregard traffic signals so as to enable it to arrive at MetroHealth as soon as possible. Furthermore, whereas Plaintiffs' daughter received treatment while the ambulance transported her to MetroHealth, she has not and cannot receive treatment when her father drives her in his car. So, it is at least plausible that the Dunphy Directive could chill Plaintiffs' exercise of their First Amendment right *by causing them* to place their daughter at greater risk to her health.

(ECF No. 22, PageID #112–13) (emphasis added).

Plaintiffs' allegation that *Defendants* placed EK-Z at greater risk to her health is unsupported.  Defendants neither discontinued EMS transportation services to Plaintiffs' residence nor refused to provide EK-Z with medical care when she required it.  Rather, EMS continued to respond to calls and provide transportation and treatment whenever Plaintiffs requested its services.  Plaintiffs voluntarily elected to forgo EMS transportation services that remained available and instead drove EK-Z themselves, despite being aware of the health risks to EK-Z. (ECF No. 2, PageID #24).  Plaintiffs' alleged injuries arise not from a denial of emergency medical services, but from the mere fact that police accompanied EMS on 911 calls to ensure the safety of EMS responders.  It is also noteworthy that Plaintiffs do not allege any harm that has come from driving EK-Z to the hospital without EMS services.  Ironically, Plaintiffs argue that EK-Z "has not and cannot receive treatment when her father drives her" to the hospital.  (ECF No. 22, PageID #112–13).  But Plaintiffs routinely denied medication in the first place.  Plaintiffs cannot have their claim (or lack thereof) both ways.  Without alleging a sufficient adverse action, Plaintiffs have

failed to establish a necessary element of a First Amendment retaliation claim against Defendants.[7] Plaintiffs' Complaint must be dismissed on this basis alone.  Even if the Court were to conclude otherwise, Plaintiffs Complaint fails for several other independent reasons.

### 1.  Retaliatory Motive as to Dr. Lally

Plaintiffs fail to allege a retaliatory motive against Dr. Lally to establish a First Amendment retaliation claim.  (ECF No. 2, PageID # 24–25).  Dr. Lally argues that Plaintiffs' fail to sufficiently plead that he had a retaliatory motive, a necessary element to support Plaintiffs' claim.  (ECF No. 20-1, PageID #98–101).  Dr. Lally argues that he is Lakewood's medical advisor, and according to the Complaint, he allegedly reviewed the February 13, 2022 EMS run report and verified the appropriateness of EK-Z's Versed dosage.  (*See* ECF No. 2, PageID #19, 21–22; ECF No. 20-1, PageID #100).  Dr. Lally contends that Plaintiffs do not allege: (1) that Dr. Lally had any role in formulating the Dunphy Directive; (2) that they communicated with Dr. Lally; or (3) that "any of their protected speech—the emails sent to the Lakewood City Council, Swallow, Dunphy, and the mayor of Lakewood—was directed to Dr. Lally." (*Id.*).  According to Dr. Lally, Plaintiffs are asking the Court to infer a retaliatory motivate allegation from facts they did not adequately plead.  (ECF No. 25, PageID #143).  Plaintiffs argue that reasonable inferences drawn from their pleadings are suggestive of both retaliation and a retaliatory motive because it is plausible that Dr. Lally "initiated the dispatching of police to their residence on August 30, 2023, either to silence them or at least to dissuade them for asserting their right to insist upon compliance with Regional EMS Protocols . . . .'" (ECF No. 23, PageID #135).

---

[7] Given that Plaintiffs have failed to state a cognizable claim of First Amendment retaliation under 42 U.S.C. § 1983, the municipal liability claim also fails.  *See Sensabaugh v. Halliburton*, 937 F.3d 621, 630 (6th Cir. 2019) (holding that plaintiff's § 1983 municipal liability claim against the school board failed because the school official did not violate the plaintiff's First Amendment rights in terminating him).

The Sixth Circuit has repeatedly held that "damage claims against governmental officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must instead, allege facts that show the existence of the asserted constitutional rights violation recited in the complaint and what each defendant did to violate the asserted right." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002). Plaintiffs' claims rest on broad, conclusory allegations that the Defendants have violated their rights by "dispatching police officers" to their home and "refusing to rescind the Dunphy Directive all in retaliation" for petitioning the government. (ECF No. 2, PageID #24).  Those allegations are "legal conclusions" that the Court need not accept as true.  *See Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011).  Plaintiffs fail to make factual allegations supporting a reasonable inference that Dr. Lally individually took such an action, much less that he did so in response to Plaintiffs' protected activity.

Furthermore, Plaintiffs offer no plausible, non-conclusory facts to show that, by following a fire department's directive to require the dispatch of police officers to accompany EMS for safety reasons, Dr. Lally's action was "motivated at least in part by [Plaintiffs'] protected conduct." *Wurzelbacher v. Jones-Kelley*, 675 F.3d at 583.  The reasonable inference here is not that Dr. Lally adhered to the Dunphy Directive as a form of retaliation, but as a safety measure in light of the concerns about the safety of both EMS responders and EK-Z.  Therefore, Plaintiffs have not shown that Dr. Lally's actions were motivated in part by their protected speech.

### 2. *Qualified Immunity as to Dunphy*

Plaintiffs have failed to negate Dunphy's entitlement to qualified immunity.  According to the City, the Complaint fails to allege that: (1) Dunphy's conduct violated a constitutional right that was clearly established law, and (2) even if it did, that a reasonable fire chief in Dunphy's

14

position would have been put on notice that implementing a protocol, refusing to change it, or instructing police officers to accompany EMS calls to Plaintiffs' residence would violate Plaintiffs' First Amendment rights merely because Plaintiffs disagreed with it.  (ECF No. 17, PageID #83).  Plaintiffs disagree, arguing that Dunphy violated their rights when he allegedly issued the Dunphy Directive because they challenged the protocol.  (ECF No. 22, PageID #115–16).  Plaintiffs contend that it is, therefore, at least plausible that Dunphy retaliated against them. (*Id.* at PageID #116).

Qualified immunity typically applies "unless the contours of the asserted right were sufficiently clear that every reasonable official would have understood that what he was doing violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)).  Since the City raised the qualified immunity defense, Plaintiffs bear the burden of showing that Dunphy is not entitled to immunity.  *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012).  At the pleading stage, a plaintiff must include factual allegations of specific conduct plausibly making out a violation of clearly established law; if a plaintiff fails to make out those claims, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.  *Johnson*, 790 F.3d at 651; *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (stating that "bare allegations ... should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery")).  Furthermore, the allegations must show that "each defendant officer, through his or her own individual actions, *personally* violated plaintiff's rights under clearly established law." *Johnson*, 790 F.3d at 651 (citing *Iqbal*, 556 U.S. at 676; *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014)) (emphasis in original).

Plaintiffs' allegations, evaluated in light of these standards, fail to pass muster.  Plaintiffs

15

also do not allege facts showing that Dunphy took adverse action against Plaintiffs because of their protected activity or that Plaintiffs' alleged petition was even a motivating factor in issuing the Dunphy Directive.  Plaintiffs also fail to put forward allegations that a reasonable chief in Dunphy's position would have understood that implementing the protocol would have *personally* violated Plaintiffs' clearly established rights.  (*See generally* ECF No. 2).

Accordingly, absent allegations of a sufficient adverse action, Plaintiffs have not pled a First Amendment retaliation claim against Defendants.  Plaintiffs' claims must be dismissed on this reason alone.  But even if Plaintiffs adequately pled a First Amendment retaliation claim against Defendants, Plaintiffs claims still fail.  Plaintiffs have not pled sufficient facts to infer a retaliatory motive as to Dr. Lally, nor overcome qualified immunity as to Dunphy.  Plaintiffs' claims against Defendants must be dismissed.  Having concluded that Plaintiffs fail to state a First Amendment retaliation claim, the Court need not consider the City's alternative arguments concerning the propriety of naming Fairbanks in his official capacity.

## IV.    CONCLUSION

For all these reasons, the Court hereby **GRANTS** the City MTD and the Lally MTD (ECF Nos. 17; ECF No. 20).  All claims against the City and Dr. Lally are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Date: August 7, 2026

_____
**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**

16